[Cite as *State v. Norman*, 2026-Ohio-761.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | C.A. No. 30623 |
| Appellee | : | |
| | : | Trial Court Case No. 2023 CR 01380/2 |
| v. | : | |
| | : | (Criminal Appeal from Common Pleas |
| JAMES NORMAN | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on March 6, 2026, the judgment of the trial court is reversed in part and remanded for the sole purpose of resentencing in accordance with the Reagan Tokes Act. The trial court's judgment affirmed in all other respects.

Costs to be paid as follows: 50% by appellee and 50% by appellant.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
CHRISTOPHER B. EPLEY, JUDGE

LEWIS, P.J., and HUFFMAN, J., concur.

CHRISTOPHER BAZELEY, Attorney for Appellant

ANDREW T. FRENCH, Attorney for Appellee

EPLEY, J.

{¶ 1} James Norman appeals from his convictions for involuntary manslaughter, aggravated burglary (physical harm), and aggravated arson (occupied structure). He claims that the trial court failed to provide the notifications required by the Reagan Tokes Act at sentencing. The State concedes error, and we agree. Accordingly, the judgment is reversed in part, and the matter is remanded for the sole purpose of resentencing him in accordance with the Reagan Tokes Act. In all other respects, the judgment is affirmed.

## I. Facts and Procedural History

{¶ 2} According to the bill of particulars, on March 11, 2023, Norman and two accomplices went to the Trotwood residence of J.H. with the intention of robbing him. During the home invasion, J.H. was shot multiple times, killing him. Soon after the three left the residence, Norman and one accomplice returned to J.H.'s residence and stole a black safe (nothing of monetary value was inside). Later that afternoon, Norman and a third accomplice went to J.H.'s home, damaged his security cameras, and stole J.H.'s vehicle, a Chrysler 300, which had been parked in the driveway. The next day, March 12, Norman again returned to J.H.'s home and set the structure on fire.

{¶ 3} On August 30, 2024, Norman was indicted on four counts of murder, two counts of aggravated burglary, two counts of felonious assault, having weapons while under disability, burglary, grand theft, and aggravated arson. Norman filed a notice of alibi, claiming he was at an address on Miller Avenue when the offenses occurred.

{¶ 4} Ultimately, on July 11, 2025, Norman pled guilty to involuntary manslaughter with a firearm specification, aggravated burglary (physical harm), and aggravated arson (occupied structure), as alleged in a bill of information. The plea agreement included, among other things, that Norman would be sentenced to "a definite minimum" prison term of 25 years and "an indefinite maximum" prison term of 30.5 years pursuant to the Reagan Tokes Act and that he would not testify on behalf of his co-defendants in their cases. After a Crim.R. 11 colloquy, the trial court accepted Norman's plea, dismissed the indictment, ordered a presentence investigation, and scheduled sentencing for August 27, 2025.

{¶ 5} At sentencing, the trial court imposed a minimum of 11 years to a maximum of 16.5 years in prison for both involuntary manslaughter and aggravated burglary, to be served consecutively, plus three additional years for the firearm specification. It further sentenced Norman to a minimum of 3 years to a maximum of 4.5 years for aggravated arson, to be served concurrently with the other two counts. Norman's aggregate sentence was a minimum of 25 years to a maximum of 30.5 years in prison, as the parties had agreed. All sentences were mandatory. The court found that Norman was entitled to 353 days of jail-time credit, and it told him about postrelease control and the consequences of violating it. The court found Norman to be an arson offender and informed him of his reporting requirements. It ordered him to pay restitution of $8,547.68 and court costs. The court did not mention the notifications set forth in R.C. 2929.19(B)(2)(c).

{¶ 6} The following day, the trial court filed a written judgment entry consistent with its oral pronouncements. The entry included the advisements required by R.C. 2929.19(B)(2)(c).

3

**{¶ 7}** Norman appeals from his convictions. His sole assignment of error claims that the trial court erred in failing to advise him of his rights under the Reagan Tokes Act at sentencing, as required by R.C. 2929.19(B)(2)(c).

## II. Notifications under the Reagan Tokes Act

**{¶ 8}** R.C. 2929.19(B)(2)(c) identifies notifications that the trial court must provide if it imposes a non-life felony indefinite prison term pursuant to the Reagan Tokes Act. "Those notifications generally pertain to the offender's minimum and maximum prison term and to the existence and operation of a rebuttable presumption of release from service of the sentence upon expiration of the minimum term." *State v. Clark*, 2022-Ohio-2801, ¶ 7 (2d Dist.). Specifically, the trial court must notify the offender:

(i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;

(ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;

(iii) That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for

4

the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;

(iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;

(v) That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

R.C. 2929.19(B)(2)(c)(i) through (v).

{¶ 9} We previously held that an indefinite prison sentence under the Reagan Tokes Act is contrary to law when the trial court fails to notify the offender at the sentencing hearing of the information set forth in R.C. 2929.19(B)(2)(c). *E.g.*, *State v. Cencebaugh*, 2023-Ohio-1309 (2d Dist.); *State v. Massie*, 2021-Ohio-3376, ¶ 23 (2d Dist.). In *Massie*, we rejected the State's argument that the trial court sufficiently notified the offender of all the information in R.C. 2929.19(B)(2)(c) by simply including the information in the judgment entry of conviction. *Massie* at ¶ 20-22.

{¶ 10} In this case, Norman pled guilty to two first-degree felonies (involuntary manslaughter and aggravated burglary) and one second-degree felony (aggravated arson). All counts were subject to the Reagan Tokes Act. *See* R.C. 2919.14(A). At sentencing, the trial court explained indefinite sentencing and how maximum sentences were calculated, but it did not provide the notifications required by R.C. 2929.19(B)(2)(c). The State agrees with Norman that his sentence is contrary to law and that he must be resentenced in compliance with R.C. 2929.19(B)(2)(c). We agree as well.

5

**{¶ 11}** We note that the trial court also improperly imposed indefinite prison terms, with a minimum and a maximum term, on each count. "The inclusion of both a minimum and a calculated maximum totaling 50 percent of the minimum term for the individual offense is proper only when one felony prison term is imposed under the Reagan Tokes Act." *State v. Searls*, 2022-Ohio-858, ¶ 32 (2d Dist.), citing R.C. 2929.144(B)(1). Because this case involves multiple counts under the Reagan Tokes Act, the trial court on remand should impose a minimum prison term for each count and make clear that the term is a stated minimum sentence, as opposed to a definite sentence. *Id*. at ¶ 33. As it did before, the court should then calculate the aggregate minimum prison term and the maximum prison term, in accordance with R.C. 2929.144(B)(2), and inform Norman of the minimum and maximum terms.

**{¶ 12}** Norman's assignment of error is sustained.

### III. Conclusion

**{¶ 13}** The trial court's judgment is reversed in part, and the matter is remanded to the trial court for the sole purpose of resentencing Norman in accordance with the Reagan Tokes Act. In all other respects, the judgment is affirmed.

. . . . . . . . . . . . .

LEWIS, P.J., and HUFFMAN, J., concur.

6